IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **TAPATIO SPRINGS REAL ESTATE HOLDINGS, LP** | § | **CASE NO. 11-51263-RBK** |
| | § | |
| | § | **Chapter 11 Proceeding** |
| Debtor. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **TAPATIO SPRINGS DEVELOPMENT COMPANY, INC.,** | § | **CASE NO. 11-51264-RBK** |
| | § | |
| | § | **Chapter 11 Proceeding** |
| Debtor. | § | |

## MOTION TO ANNUL OR LIFT STAY

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

**IF NO TIMELY RESPONSE IS FILED WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

TO THE HONORABLE U.S. BANKRUPTCY JUDGE KING:

Now come Clyde B. Smith and Peggy Smith ("Smiths"), secured creditors and parties-in-interest herein, and pursuant to Section 362(d)(1) and (2) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Bankruptcy Rule 4001, file this Motion to Annul or Lift Stay ("Motion"). In support of the Motion, the Smiths would respectfully show the Court as follows:

### I. EXPEDITED RELIEF

1. Contemporaneously with the filing of this Motion to Annul or Lift Stay, Smiths are filing a Motion for Expedited Hearing. If the stay is not annulled, given the timing and purpose of

these bankruptcy filings and the imminent deadline to re-post the property for May foreclosure, expedited relief is appropriate.

## II. INTRODUCTION

2. On January 3, 2011, Debtors Tapatio Springs Development Company, Inc. ("TSDC") and Tapatio Springs Real Estate Holdings, LP ("TSREH") (together "Debtors") voluntarily filed for Chapter 11 bankruptcy relief under causes 11-50050-BK and 11-50054-BK respectively (the "First Bankruptcies"). The Debtors filed the First Bankruptcy the day before the Smiths were set to foreclose on certain real estate on January 4, 2011. On February 17, 2011, the Court dismissed the First Bankruptcies on the Smith's motion and without opposition from the Debtors. Once dismissed, the Smiths re-posted the real estate for non-judicial foreclosure on April 5, 2011 at 10:00 AM. No payments have been made against the Smith debt since February 2010.

3. Debtors filed the instant second voluntary Chapter 11 petitions in bankruptcy on April 5, 2011 (the "Second Bankruptcies"). There is no significant difference between the Debtors' financial condition as presented in the First Bankruptcies and the Second Bankruptcies other than the change of counsel for the Debtors. For example, the Smiths are still the largest creditor of the Debtors, the Debtors have not acquired additional assets in the Second Bankruptcies, and the Debtors do not identify any new business operations from which a viable plan of reorganization can be developed.

4. The Debtors Second Bankruptcies were filed merely minutes prior to the announced starting time of the posted foreclosure proceedings. Indeed, the foreclosure proceeded at 10:00 AM as announced because neither Debtors nor counsel for Debtors notified counsel for the Smith of the Second Bankruptcies until after the foreclosure was called and concluded with no

party bidding more than the Smith's credit bid. See the Affidavit of Jason Zehner dated April 5, 2011 which is attached hereto as Exhibit A.

5. As presented in the First Bankruptcies, Debtor is indebted to the Smiths under a Deed of Trust dated March 1, 1993 and recorded in Volume 393, Page 08 of the Official Records of Kendall County, Texas (the "Deed of Trust") securing a Real Estate Lien Note (the "Note") in the original amount of $5,204,494.28 payable to Tapatio Springs, Inc., by Tapatio Springs Development Company, Inc. Subsequently, Tapatio Springs, Inc. dissolved and its assets, including the Note and the liens securing it, were distributed to Clyde B. Smith. The Note was extended on August 1, 2005 (Volume 945, Page 600-608, Kendall County) and modified, in part, adding Peggy Smith as a Lender and setting the interest rate at 6% per annum. The Note was again modified and extended on February 22, 2008 (Volume 1154, Page 94-109, Kendall County) and further extended on June 17, 2009 to September 1, 2009 (Volume 1172, 56-71), when the unpaid principal and interest totaled $3,226,637.55. The note has matured and due and payable in full. No payments have been made against the Note, as amended and extended, since March 2010. Attached hereto as Exhibit B is the Affidavit of Clyde B. Smith authenticating the foregoing in connection with the First Bankruptcies. During the proceedings in the First Bankruptcies, the Debtors' acknowledged the validity of the Smith debt and lien. Pursuant to Rule 201, the Smiths ask that the Court take judicial notice of Debtors' acknowledgments.

6. Furthermore, the Deed of Trust provides that it secures Debtor's payment of the indebtednesses and the obligations therein described (collectively, the "Obligations") including but not limited to:

(a) payment of the Note;

(b) payment of all renewals, modifications and extensions of the Note,

(c) payment of any and all present and future indebtedness of Tapatio Springs Development Company, Inc., Clyde B. Smith and Peggy J. Smith are the current owners and holders of the Obligations and the Beneficiaries under the Deed of Trust;

(d) payment of Smiths' attorneys' fees.

The Deed of Trust also identifies the collateral securing the Note, which is generally described approximately 600 acres of undeveloped, raw land in Kendall County, Texas and more particularly described on Exhibit A to the Note (the "Collateral"). In addition to the principal and interest outstanding on the Notes, late fees, costs, and attorneys fees and costs are also due, and continue to accrue as provided by the Deed of Trust.

7. As of April 5, 2011, the accrued principal and interest due on the Note is $3,453,120.99 (the accrued and unpaid interest through April 5, 2011 is $226,483.44; annual interest is $193,598.25; monthly interest is approximately $16,133.19, and per diem interest is $530.41). This figure does not include the costs of collection incurred including attorneys fees and costs of court.

8. Smiths have performed all obligations required of them. Debtor has defaulted in its obligations to the Smiths and the Note is in default. Debtor's debt to the Smiths is entirely secured in the Collateral.

9. Debtor in both captioned cases filed essentially identical schedules and statement of financial affairs, including listing the Collateral as an asset of the estate. Because of the overlap between the Debtors and their interest in the Collateral, and to avoid further delay, Smith is seeking relief in both causes.

10. In the First Bankruptcies, the Debtor indicated that the sole purpose for filing for bankruptcy protection was to stay Smith's foreclosure action scheduled for January 4, 2011. The Second Bankruptcies were filed moments before the announced start time for the Smith's April 5,

2011 foreclosure. The Smiths submit that these proceedings were filed solely to hinder of delay the foreclosure and there is no reasonable likelihood of a reorganization of this non-income generating single piece of real estate.

11. The Debtor has little or no ability to provide adequate protection, there little to no equity in the Collateral, and the Collateral is not necessary for an effective reorganization. The Smiths hereby move for relief from the automatic stay for cause. The non-judicial foreclosure occurred as noticed by the Smiths moments after the Second Bankruptcies were filed and prior to the Debtors providing notice to the Smiths' counsel and was concluded with the Smiths' credit bid prevailing. Accordingly, the Smiths request that the Court annul the automatic stay and allow the foreclosure to stand. Alternatively, the Smiths request that the Court lift the stay to allow the Smiths to foreclose on the Collateral at the next available date, May 3, 2011. In the further alternative, the Smiths request that the Court determine that Debtor represents a single asset real estate case and require the Debtor to file a plan of reorganization within 30 days upon penalty of lifting the stay to allow the Smiths to foreclose.

### III. JURISDICTION

12. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334. This Court has authority to grant the relief requested pursuant to 11 U.S.C. § 362(d) (1), (2) and (3).

### IV. ARGUMENT

13. The automatic stay should be lifted for "cause" in regard to the Collateral. The party opposing the relief from the stay has the burden of proof on all issues other than the debtor's equity in the property. 11 U.S.C. § 362(g). In this case, cause favors lifting the stay because the Smith's interest in the Collateral is not adequately protected. 11 U.S.C. §362(d)(1). The Smiths are not receiving any payments from the Debtor on the Debtor's obligations, and have not

received a payment from the Debtor since long before the Debtor filed for bankruptcy. Indeed, Debtor's petition indicates that the Collateral (undeveloped real estate) generates only $14,000 per year for a cell tower lease, which income is insufficient to bring the Note current and is incapable of maintaining the Note on a current basis. The Smiths cannot be adequately protected and the stay should be lifted.

14. Additionally and alternatively, pursuant to 11 U.S.C.§ 362(d)(2), the automatic stay should be lifted with regard to the Collateral because the Debtor has insufficient equity in the Collateral to enable the Debtor reorganize using the Collateral while the obligations to the Smiths continue to increase. Indeed, the Collateral bears tax liabilities for the Debtor that also continue to increase.

15. Further, the Collateral is also not necessary for Debtor's effective reorganization. Although the continued ownership of the real estate could conceivably be a component of a future plan of reorganization, that alone is insufficient to carry the burden of proof under § 362(d)(2). In fact, the Debtor has failed to address how the Collateral will be a part of any re-organization. To meet its burden, the Debtor must additionally demonstrate by a preponderance of the evidence that there is a "[r]easonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (1988). In this instance, the debtor has attempted to market the property for many years. Smith afforded Debtor ample time to market the property and extended the payment terms on several occasions for that purpose. Unfortunately, Debtor's marketing efforts have been unsuccessful and allowing the Debtor additional time to market the property further exposes the Smiths to additional expenses with no likelihood of being made whole within a reasonable time. Smith has received no payment on the debt since February 2010 and interest alone continues to accrue in excess of $16,000

monthly. Based on Debtor's filings in the Second Bankruptcies, accrued and unpaid property taxes exceed $60,000. More importantly, the only income generated by subject property is $1,000/monthly from the lease of a cell tower. The other revenue generated by the Debtors and reflected in the State of Financial Affairs is from the sale of land, which has still been insufficient in the last 2 years to satisfy the annual interest due and owing to the Smiths. The Smiths submit that Debtor is incapable of providing adequate protection and, to the extent there is some limited equity cushion, this cushion will be quickly eroded. The Smiths and the ad valorem tax assessor are the only true creditors in this proceeding as all others are insiders or equity holders; consequently, there is no ongoing business to reorganize.

16. As noted above, the First Bankruptcies and the Second Bankruptcies were filed on the eve of foreclosure. The Second Bankruptcies were filed only minutes prior to the non-judicial foreclosure sale noticed by the Smiths for April 5, 2011. In fact, the non-judicial foreclosure was completed prior to the Smiths receiving notice of the Second Bankruptcies and the Smiths' credit bid was the only bid for the Collateral made. Because there is cause and because the foreclosure was completed without notice of the Second Bankruptcies, it is within the Court's power to retroactively annul the automatic stay as to the Smiths and the foreclosure sale. *See* 11 U.S.C. §362(d) ("the court shall grant relief from the stay… such as by terminating, annulling, modifying, conditioning such stay…"). "Annulment of the stay has the effect of eliminating it (or terminating it retroactively.") *In re Pierce*, 272 B.R. 198, 204 (Bankr. S.D. Tex. 2001) (referencing *Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir. 1989)). In *In re Jones*, 63 F.3d 411 (5th Cir. 1995) the appellate court concluded that, "Given the fact that the Garcias, who are not commercial lenders, received neither actual nor presumed constructive notice of the Joneses' bankruptcy filing until after title had transferred to them, we perforce conclude that there was

neither error nor an abuse of discretion afforded by the court by section 362(d)." The same circumstances and facts are applicable here.

17. Additionally and alternatively, pursuant to 11 U.S.C. § 101(51B) and 362(d)(3), single asset real estate debtors are subject to special provisions of the Bankruptcy Code. The term "single asset real estate" is defined as "a single property or project, other than residential real property with fewer than four residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental."*Id.* The Collateral securing Debtor's Note to the Smiths is raw, undeveloped land and which generates only virtually no income for the Debtor and the Debtor has disclosed no other income.

18. The Bankruptcy Code provides circumstances under which creditors of a single asset real estate debtor may obtain relief from the automatic stay which are not available to creditors in ordinary bankruptcy cases. 11 U.S.C. § 362(d)(3). On request of a creditor with a claim secured by the single asset real estate, the court will grant relief from the automatic stay to the creditor unless the debtor files a feasible plan of reorganization or begins making interest payments to the creditor no more than 90 days from the date of the filing of the case, or within 30 days of the court's determination that the case is a single asset real estate case. The interest payments must be equal to the non-default contract interest rate on the value of the creditor's interest in the real estate. 11 U.S.C. § 362(d)(3).

## V.  CONCLUSION

The foregoing considered, the Smiths ask that the Court to immediately annul the automatic stay and retroactively validate the Smiths' foreclosure against the Collateral on April 5,

2011, or to alternatively lift the automatic stay and allow the Smiths to re-post the Collateral for foreclosure for May 3, 2011, or to alternatively declare that the Debtor represents a single asset real estate case and require the Debtor to file a plan of reorganization within 30 days upon penalty of lifting the stay to allow the Smiths to foreclose and such further and other relief to which the Smiths may be justly entitled both at law in and in equity.

Dated: April 5, 2011

                Respectfully submitted,

                **DAVIS, CEDILLO & MENDOZA, INC.**
                755 E. Mulberry Street, Suite 500
                San Antonio, Texas 78212
                Telephone: 210.822.6666
                Telecopier: 210.822.1151

                By:   /s/ Derick J. Rodgers
                      DERICK J. RODGERS
                      State Bar No. 24002857

                -   And -

                THOMAS W. McKENZIE
                THOMAS W. McKENZIE, ATTY.
                10107 McAllister Frwy.
                San Antonio, Texas 78216
                Telephone: 210.227.2698
                Telecopier: 210.227.9334
                Email: tmckenzie@tsslawyers.com

                COUNSEL FOR CLYDE B. SMITH AND PEGGY SMITH

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of April, 2011, a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure to the parties on the attached Service List.

Dean W. Greer
2929 Mossrock, Suite 117
San Antonio, Texas 78230

Tapatio Springs Development Company, Inc.
10004 Johns Road
Boerne, Texas 78006

Tapatio Springs Real Estate Holdings, LP
110 Axis Circle
Boerne, Texas 78006

Kendall County Tax Assessor Collector
Attn: James Hudson
201 E. San Antonio Street
Boerne, Texas 78006

US Trustee
PO Box 1539
San Antonio, TX 78205

       /s/ Derick J. Rodgers
       Derick J. Rodgers

17996.0002 Clyde Smith.Bankruptcy\Pleadings-Motions\Motion to Annul or Lift Stay (FINAL TWN-DJR)